# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GREGORY DILLER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 20-4792 |

## O P I N I O N

SCOTT W. REID                                              DATE:  April 28, 2023
UNITED STATES MAGISTRATE JUDGE

John Gregory Diller brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB").  He has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.     *Factual and Procedural Background*

Diller was born on March 16, 1957.  Record at 161.  He completed college and obtained a graduate degree.  Record at 37.  He worked for many years in the banking industry as a senior loan coordinator, and then as a commercial credit group manager.  Record at 219.  On June 29, 2018, Diller filed an application for DIB, alleging disability since June 1, 2017, on the basis of depression and anxiety disorders, Barrett's Esophagus, insomnia, gastroesophageal reflux disorder ("GERD"), and allergies.  Record at 161, 200.

Diller's application for benefits was denied on October 16, 2018.  Record at 94.  He then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 105.  A hearing took place in this case on September 4, 2019.  Record at 30.

On September 30, 2019, the ALJ issued a written decision denying benefits. Record at 15. The Appeals Council denied Diller's request for review on August 5, 2020, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security. Record at 1. Diller then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and Diller's Request for Review*

In her decision, the ALJ determined that Diller suffered from the severe impairments of depression, an anxiety disorder, and a panic disorder.  Record at 17.  She decided that none of Diller's impairments, and no combination of impairments, met or medically equaled a listed impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Record at 23-25.

As to Diller's RFC, the ALJ wrote:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels and he is limited to simple and routine tasks and can tolerate very little to no deviation from work routines.  He can occasionally interact with coworkers and never interact with the public.  He can respond appropriately to interaction with supervisors when that interaction occurs occasionally for the purpose of receiving instructions.

Record at 19.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Diller could not return to his prior work, but could work in occupations such as a commercial or industrial cleaner, either at a heavy or medium exertional level, or at the light level as an assembler of electrical accessories. Record at 24. She decided, therefore, that he was not disabled. Record at 25.

Diller argues in his Request for Review that the ALJ erred in (1) failing to credit reports from his treating physicians on the basis that isolated parts of the reports contained opinions on the ultimate issue of disability; (2) inadequately explaining why she only partially credited the opinion of the consultative mental health examiner; and (3) finding him not disabled even though he could only interact with supervisors "when that interaction occurs occasionally for the purpose of receiving instructions."

Diller also argues that he is entitled to a remand because, at the time the ALJ filed her decision, the Commissioner of Social Security was Andrew Saul, and that, because the Commissioner was removable only for cause and served a longer term than the president, his appointment violated the separation of powers, "rendering the decision in this case by an ALJ and Appeals Council judges, who derived their authority from Mr. Saul, constitutionally defective." Request for Review at 3-4.

IV.    *Discussion*

    A.    *Treating Physician Opinions*

In her decision, the ALJ wrote:

> While reviewed and considered as part of the record, statements on issues reserved to the Commissioner … are neither valuable nor persuasive to the issue of whether a claimant is disabled or blind under the Social Security Act. This includes a December 2018 statement from Dr. Cotter that the claimant's "episodes of anxiety and depression, which resulted in his disability, unable to perform any duties related to his job." This also includes Dr. Cotter's July and December 2017 statements that the claimant is "unable to

4

      perform any essential [job] duties." Additionally, in December 2018, Dr. Cotter noted "the severity and long-lasting nature of his symptoms would support his inability to work." Further, this includes an August 2019 statement from Robert B. Frazier, PhD, the claimant's psychologist in 2016, that the claimant's "symptoms have interfered with his ability to work in the past." Therefore, no analysis about how such evidence is considered is provided (20 C.F.R. §404.1520b(c)).

Record at 23. (Internal citations omitted).

      Diller does not dispute that, under 20 C.F.R §404.1520b(c), a doctor's statement regarding whether a claimant is disabled is a legal issue reserved to the Commissioner, and must therefore be disregarded by an ALJ. He argues, however, that the ALJ "threw out the baby with the bathwater" by disregarding the submissions of his treating doctors as a whole, even though they contained other statements which did not fall into this category.

      1.    *Dr. Cotter*

      John Cotter, MD, was Diller's primary care physician. As to him, Diller's argument is factually inaccurate. Before rejecting Dr. Cotter's opinions on issues reserved to the Commissioner, the ALJ discussed his report as a whole. Record at 21-22. She explained that she found it "unpersuasive" because it was (1) inconsistent with his treatment notes; (2) inconsistent with Diller's mental health treatment history; and (3) was a "checklist with minimal explanation." *Id*.

      The ALJ's finding of inconsistency was supported by substantial evidence. On a questionnaire dated July 27, 2019, Dr. Cotter checked off that Diller had extreme limitations in maintaining attention and concentration for more than an hour; performing activities within a schedule; maintaining regular attendance; and being punctual. Record at 467. Out of the 20 functions identified on the questionnaire, Dr. Cotter also indicated that Diller had eight marked limitations, including in the ability to make simple work-related decisions, to work in coordination with or proximity to others, and to sustain concentration and persistence. Record at

5

467-9.  He checked off moderate limitations in eight other functions.  *Id*.  Dr. Cotter indicated that Diller had "no significant limitations" in only two areas:  the ability to ask simple questions or request assistance, and the ability to be aware of normal hazards and take appropriate precautions.  *Id*.  Thus, he found that Diller's functioning was extremely limited.

Yet, in his treatment notes, Dr. Cotter nearly always found Diller to have a "normal mood" even when he appeared anxious, and otherwise described him at times as well-appearing, or well dressed and well groomed, with good eye contact and appropriate speech.  Record at 313, 316, 319, 322, 325, 333, 336, 338, 342, 345, 458, 46, 463.  His mood was abnormal only around the time he was terminated from his work in 2017, but even then, he was in no acute distress.  Record at 338, 342, 345.  Dr. Cotter's most recent treatment notes indicate that Diller repeatedly declined offers to increase or adjust his psychiatric medications.  Record at 457, 461, 462.

Further, Diller's mental health treatment history is even more scant than the ALJ described.  The ALJ wrote that Diller had a "lack of recent inpatient mental health treatment or referral to crisis intervention."  Record at 22.   In fact, Diller had no history of inpatient mental health treatment at all.  Record at 393.  Nor does the record contain mention of partial hospitalization or crisis intervention.  Diller participated in psychotherapy only in 2002, and for a four-month period in 2016 when he treated with Dr. Frazier, as discussed below.  Record at 393, 472.

In fact, Diller did not treat with any mental health professional during the period relevant to his application for DIB.  His psychiatric medications were prescribed by Dr. Cotter.  Record at 66.  Diller received counseling from his pastor, but not at an intensive level.  On October 8, 2018, Diller told consulting examiner Sarah Springer, Psy.D., that he had been meeting with his pastor weekly since August, 2018.  *Id*.  At his hearing before the ALJ, however, he stated that his

pastoral counseling "was always every two weeks," and sometimes once in three weeks, depending on the pastor's schedule. Record at 67.

As above, the ALJ acknowledged that Diller suffered from severe depression, anxiety, and panic attacks. Record at 17. She also found that he could not return to his past work. Record at 23. However, given Diller's unremarkable treatment history and consistently normal appearance and behavior at his appointments, the ALJ was entitled to find that Diller was not as limited as indicated by Dr. Cotter in his questionnaire responses.

### 2. *Dr. Frazier*

Robert B. Frazier, Ph.D., was a psychologist who treated Diller between February and May, 2016. Record at 472. He submitted a report dated August 23, 2019. *Id*. The ALJ did not discuss Dr. Frazier's report other than to reject his observation that Diller's symptoms interfered with his "ability to work" in the past. Even if the ALJ somehow erred in this regard, however, the error would not warrant remand. Remand is not necessary where it would not affect the outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, (3d Cir. 2005).

Dr. Frazier was only able to describe Diller's condition between February and May, 2016, and did not purport to do otherwise. Record at 472. Therefore, his report could not significantly influence the ALJ even if she considered it on remand, since her task was to consider Diller's condition beginning over a year later, on his alleged disability date of June 1, 2017. Mental status is not irreversible, like a desiccated disc, and can improve. Indeed, Dr. Frazier reported that Diller "was able to eventually return to work at the end of our treatment." *Id*. At most, Dr. Frazier's report indicated that Diller had severe mental impairments which prevented him from engaging in his stressful prior work. The ALJ, however, has already recognized that. Therefore, Dr. Frazier's report could not affect the ALJ's decision.

7

B.     *The Consulting Examiner*

As noted above, Diller was examined by Sarah Springer, Psy.D., an independent consulting mental health expert, on October 8, 2018. Dr. Springer submitted a written Mental Status Evaluation. Record at 393. The ALJ wrote that this statement was "partially persuasive." Record at 21. She accepted Dr. Springer's finding that Diller was moderately limited in interacting with others. *Id*. However, she rejected Dr. Springer's assessment of moderate limitations in understanding, remembering, and carrying out instructions, and marked difficulties in responding appropriately to work situations, and to changes in a routine work setting. *Id*.

As she did with Dr. Cotter's report, the ALJ explained her reasoning, noting that the rejected findings were not supported by Dr. Springer's examination results. *Id*. Dr. Springer wrote that Diller displayed intact attention and concentration, though mildly impaired memory; average to above-average cognitive functioning; and good insight and judgment. Record at 395. Further, Dr. Springer found Diller to be fully oriented and cooperative, with "coherent and goal directed" thought processes. *Id*.

Diller argues here that the ALJ was wrong in assuming that an individual with intact attention, good insight and judgment, and the other the abilities noted by Dr. Springer, could not have "depression, anxiety disorder and panic disorder." Plaintiff's Brief at 11. This is an odd argument to make, however, since the ALJ explicitly found that Diller suffered from all three of these impairments. Record at 17. She merely found that some of Dr. Springer's findings as to the limitations caused by the impairments were unsupported.

Diller goes on to argue that the ALJ could not disagree with Dr. Springer's opinion without relying on a contrary medical opinion. *Id*. This is not necessarily true, since the ALJ relied upon Dr. Springer's own clinical findings. Nevertheless, the ALJ also relied upon a report

8

from Salvatore Cullari, Ph.D., an agency psychological consultant who reviewed Diller's medical records. Record at 86-87. Dr. Cullari found that Diller had only mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in managing himself. *Id*.

> Dr. Cullari concluded:
>
> Although the claimant has some problems with task completion and social anxiety, it appears that he retains the ability to complete simple routines. He can relate to others in a superficial manner required for work completion. He continues to have some depression/anxiety, but not to the extent where it would prevent him from working. Overall, he appears to retain the ability to complete simple routine, repetitive tasks in a normal work environment.

Record at 87.

The ALJ wrote that Dr. Cullari's statement was persuasive because it was consistent with the treatment notes which described Diller's normal behavior and appearance, and with his lack of a remarkable mental health treatment history. Record at 21. Thus, Diller has not succeeded in showing any error with the ALJ's treatment of Dr. Springer's evidence.

    C.    *Ability to Interact with Supervisors*

As noted, the ALJ found as part of her RFC assessment that Diller could occasionally interact with supervisors "for the purpose of receiving instructions." Record at 19. The vocational expert testified that work existed at several exertional levels for an individual with that limitation. Record at 74-75. Diller argues, however, that the ALJ's finding implied he was not capable of interacting with supervisors for the purpose of receiving criticism, and that if he could not "respond appropriately to criticism from supervisors," he should not have been found able to work.

9

This argument might have some merit if there was any evidence in the record that Diller was indeed unable to respond appropriately to criticism from a supervisor. However, there was none. Diller's counsel did not question the vocational expert on this point. Record at 75-78. Nor has Diller pointed to any evidence in the record indicating that he has such a limitation.

On the contrary, Diller described his former direct supervisor in positive terms in his testimony, reporting that he initially offered helpful accommodations by dealing himself with personnel issues Diller found troubling, and that he was understanding regarding Diller's bouts of panic and abdominal pain. Record at 43, 44, 47-48. Diller testified: "He was a very agreeable boss, very good boss." Record at 47.

Thus, Diller did not attribute his inability to cope with his prior to work to a difficulty responding to criticism from his supervisor. He explained that the stress he experienced came from the level of work expected from him, particularly the stressful personnel issues (Record at 43: "we did have a very challenging team ... some very strong-willed people") as well as the sheer quantity of work, which was magnified by a deterioration in the quality of the people hired to work under him:

> And … they were hiring more people, more lenders and more workers coming our way. And they were hiring lenders that didn't know – really have the experience and really know that much about … some of the commercial lending things … They'd bring in this piles of messes of papers of stuff that really didn't often times make sense, or they didn't understand the loan request correctly .. So they kept hiring more of those because all of the sudden they wanted to grow. … So that was very stressful to me. And I would …. be the person again that had to organize it, try to figure out what we have. Is it enough that I can give [it] to one of my analysts to work or not? And it got to the point where I just got overwhelmed with that … .

Record at 50. (Minor grammatical errors in original).

It is impossible to fault the ALJ for failing to make a specific finding about Diller's ability to respond appropriately to criticism from a supervisor when no such issue was before her. Diller has not shown he is entitled to relief on this claim.

D. *Seila Law LLC v CFPB*

Finally, Diller argues that he is entitled to remand under the decision of the United States Supreme Court in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct 2183 (2020). There, the Supreme Court found that a violation of the constitutional separation of powers occurs when an executive agency is led by a single head who serves for a longer term than the president, and who can only be removed from that position for cause. Diller argues that *Seila Law* applies to the Social Security Administration because the Commissioner serves for six years and is removable only for cause. 42 U.S.C. §902(a)(3). He argues that this invalidates his hearing and the Commissioner's decision.

Nevertheless, a year after *Seila Law* was decided, the United States Supreme Court defined some of the limits of that decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). In *Collins*, shareholders relied upon *Seila Law* in seeking to undo some actions of the Federal Housing Finance Agency ("FHFA"). The Supreme Court said that the shareholders "read far too much into" *Seila Law*. 141 S. Ct at 1788. It explained that *Seila Law* did not invalidate the actions of an officer whose terms of service were unconstitutional; "settled precedent" confirmed that the unlawfulness of a removal provision "did not strip an FHFA director of the power to undertake the other responsibilities of his office." *Id*. and n. 23.

The *Collins* court specifically decided that, unlike in *Lucia v. SEC*, 138 S Ct. 2044 (2018), the actions taken by the FHFA directors were valid:

> Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed

11

> method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA ... as void.

*Id*. at 1788 (Italics in original).

Following *Collins*, then, there is no reason to regard all actions taken by a Social Security Commissioner as void, even if 42 U.S.C. §902(a)(3) is unconstitutional. Thus, the *Seila Law* decision does not provide Diller with an automatic right to a remand.

The *Collins* court did not rule out the possibility than an unconstitutional restriction of the President's power to remove an agency head could inflict compensable harm. *Id*. at 1788-9. In these circumstances, however, it must be shown that the removal restriction was the cause of the harm suffered by the plaintiff. *Id*. at 1789. The *Collins* case was remanded to the lower courts to determine whether the plaintiffs could demonstrate this. *Id*.

Citing *Collins*, courts in this Circuit have agreed that *Seila Law* does not compel the vacating of a disability decision by the Social Security Commissioner where the plaintiff cannot show a nexus between his or her harm and the unconstitutional removal provision. *Neafcy v. Commissioner of Soc. Sec.*, Civ. A. No. 21-3839, 2023 WL 2682361 at *3, n. 27 (E.D. Pa. Mar. 29, 2023); *Burgess v. Kijakazi*, Civ. A. No. 21-1584, 2022 WL 17822441 at *8 (E.D. Pa. Dec. 19, 2022); *Adams v. Kijakazi*, Civ. A. No. 20-3591, 2022 WL 767806 at **9-11 (E.D. Pa. Mar. 14, 2022); *High v. Kijakazi*, Civ. A. No. 20-3528, 2022 WL 394750 at *6 (E.D. Pa. Feb. 9, 2022); *Wicker v. Kijakazi*, Civ. A. No. 20-4771, 2022 WL 267896 at **8-10 (E.D. Pa. Jan. 28, 2022); *Mor v. Kijakazi*, Civ. A. No. 21-1730, 2022 WL 73510 (D.N.J. Jan. 7, 2022); *Crossley v. Kijakazi*, Civ. A. No. 2298, 2021 WL 6197783 at *8 (M.D. Pa. Dec. 31, 2021).

Many other courts have reached the same conclusion. *Deborah H. v. Kijakazi*, Civ. A. No 21-1195, 2023 WL 2745549 (S.D. Ill. Mar. 31, 2023); *Coats v. Kijakazi*, Civ. A. No. 21-1762, 2023 WL 2706857 at *18 (M.D. Fla. Mar. 30, 2023); *Audra E. v. Commissioner of Soc.*

12

*Sec.*, Civ. A. No. 22-1815, 2023 WL 2633669 at \*\*304 ( S.D. Oh. Mar. 24, 2023); *Nudelman v. Commissioner of Soc. Sec.*, Civ. A. 20-8301 2022 WL 101213 at \*13 (D. Ariz. Jan. 11, 2023); *Shannon R. v. Commissioner of Social Security*, 2021 WL 5371394 at \*\*7-9 (W.D. Washington, Nov. 18, 2021); *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141 at \*18 (D. Neb. Nov. 15, 2021); *Webb v. Kijakazi*, No. 1:20CV714, 2021 WL 5206498 at \*15 at n. 12 (M.D.N.C. Nov. 9, 2021) (Report and Recommendation); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397 at \*\*2-3 (W.D.N.C. Oct. 27, 2021); *Robles v. Commissioner of Social Security*, No. 220CV01069JDPSS, 2021 WL 4285170 at \*4, n. 6 (E.D. Cal. Sep. 21, 2021); *Angelita O. v. Kijakazi*, No. 1:20-CV-00034-AJB, 2021 WL 4146085 at \*18 at n. 13 (N.D. Ga. Sep. 13, 2021).

Thus, even in the absence of a decision from the Court of Appeals for the Third Circuit, it is not difficult to see that *Collins* requires Diller to demonstrate a nexus between the decision denying him disability benefits and 42 U.S.C. §902(a)(3). He has not done this. Instead, he argues that the Commissioner's decision was invalid because it was based on the decision of an ALJ whose "delegation of authority" came from Andrew Saul and was therefore constitutionally defective, and that it was made under regulations Mr. Saul had no constitutional authority to issue. Plaintiff's Brief at 17. This, of course, is the exact argument rejected in *Collins*. It cannot succeed here.

*V*.     *Conclusion*

In accordance with the above discussion, I do not find legal error on the part of the ALJ, and I find that she applied the correct legal standards. I conclude, therefore, that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE